**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CANDICE RICHARDSON** , individually and as the Special Representative of the Estate of Jane Doe, Deceased,<br><br><br>Plaintiff,<br><br>v.<br><br><br><br>**BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER CORPORATION, BAYER HEALTHCARE, LLC,**<br><br>and<br><br>**BAYER SCHERING PHARMA AG**,<br><br>Müllerstrasse 178<br>D-13353 Berlin<br>Germany<br><br><br>Defendants. | **IN RE: YASMIN AND YAZ MDL No. 2100**<br><br><br><br>**Case No. 3:09-cv-20055-DRH-PMF**<br><br> **AMENDED COMPLAINT JURY TRIAL DEMANDED** |

*Plaintiff has amended her complaint pursuant to Case Management Order No. 17 to add the Defendant Bayer Schering Pharma AG.  Paragraphs 15, 16, 17, 18, 19, 20, 21, 22, 23, 24 have been added; Paragraph 25 has been changed.*

<u>**AMENDED COMPLAINT**</u>

Plaintiff, Candice Richardson (hereinafter "Plaintiff"), individually and on behalf of the estate of Jane Doe, deceased ("Decedent"), by and through counsel, as and for her Amended Complaint against Defendants, alleges as follows:

92660.1

## NATURE OF THE ACTION

1.      Plaintiff brings this action for negligence, strict product liability, breach of express and implied warranty, negligent misrepresentation and/or fraud, intentional and wanton conduct, and violation of the relevant Deceptive Trade Practices Act for damages suffered as a result of ingesting the combination oral contraceptive Yaz/Yasmin, also known generically as drospirenone and ethinyl estradiol (hereinafter collectively referred to as "Yaz/Yasmin").

## PARTIES AND JURISDICTION

2.      Plaintiff Candice Richardson is a resident and citizen of the state of Texas.

3.      Plaintiff, pursuant to a prescription, purchased and ingested Yaz/Yasmin and, while using Yaz/Yasmin, suffered blood clotting and related injuries, requiring hospitalization, and resulting in the stillbirth of her daughter, at twenty-seven (27) weeks of pregnancy.

4.      Plaintiff alleges an amount in controversy in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

5.      Defendant Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

6.      Defendant Bayer Healthcare LLC is, and at all relevant times was, a limited liability corporation organized under the laws of the state of Delaware with its headquarters and principal place of business at 555 White Plains Road, Tarrytown, New York 10591.

7.      Defendant Bayer Healthcare LLC is wholly owned by defendant Bayer Corporation.

8.      Defendant Bayer Corporation is the sole member of Bayer Healthcare LLC. Defendant Bayer Healthcare LLC owns 100% of Schering Berlin, which owns 100% of Bayer

92660.1

Healthcare Pharmaceuticals, Inc.   As such, Defendant Bayer Corporation is a parent of Defendant Bayer Healthcare Pharmaceuticals, Inc.

9.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is a Delaware corporation organized under the laws of the state of Delaware with its headquarters and principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.

10.      Defendant Bayer Healthcare Pharmaceuticals, Inc. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

11.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is the holder of the approved New Drug Application ("NDA") for Yaz.

12.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is the holder of the approved New Drug Application ("NDA") for Yasmin.

13.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is, and at relevant times was, engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz/Yasmin.  At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. conducted regular and sustained business in Illinois by selling and distributing its products in Illinois and engaged in substantial commerce and business activity in Illinois.

14.      Defendant Bayer Healthcare Pharmaceuticals, Inc. is a corporate successor to Berlex Laboratories, Inc. ("Berlex"), which was formerly known as Berlex, Inc., and, as such, is obligated for its predecessor's liabilities.  Berlex was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling

and/or selling, either directly and indirectly through third parties or related entities, the drug Yaz/Yasmin.  Berlex Laboratories, Inc. and Berlex, Inc. were integrated into Bayer Healthcare and operate as an integrated specialty pharmaceuticals business under Bayer Healthcare Pharmaceuticals, Inc.

15.     Defendant Bayer Schering Pharma AG, formerly known as Schering AG, is a pharmaceutical company that is organized and existing under the laws of the Federal Republic of Germany, having a principal place of business at Müllerstrasse 178, 13353 Berlin, Germany.

16.     Defendant Bayer Schering Pharma AG is a corporate successor of Schering AG.

17.     Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006.

18.     Defendant Bayer Schering Pharma AG's headquarters and principal place of business in the United States is located at 100 Bayer Road, Pittsburg, Pennsylvania 15205.

19.     Defendant Bayer Schering Pharma AG is the current owner of the patent(s) relating to the oral contraceptive Yaz®.

20.     Defendant Bayer Schering Pharma AG is the current owner of the patent(s) relating to the oral contraceptive Yasmin®.

21.     Bayer AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

22.     Bayer AG is the third largest pharmaceutical company in the world.

23.     Bayer AG is the parent/holding company of all other named Defendants.

24.     Bayer AG's headquarters and principal places of business in the United States is located at 100 Bayer Road, Pittsburg, Pennsylvania, 15205.

92660.1

25.     Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, Bayer Corporation, Bayer AG, and Bayer Schering Pharma AG are collectively referred to herein as "Bayer", "Bayer Defendants", or "Defendants."

26.     At relevant times, Bayer was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Yaz/Yasmin.  At relevant times, Bayer conducted regular and sustained business in Illinois by selling and distributing its products in Illinois and engaged in substantial commerce and business activity in Illinois.

27.     Jurisdiction and venue are proper under the United States Constitution as well as under Illinois law regarding personal jurisdiction.  Defendants have transacted substantial and continuous business in the State of Illinois, have committed tortious acts and deceptive practices and breached warranties in this state, which form the basis for this cause of action.

28.     This court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332, for diversity of citizenship, and Plaintiff claims an amount in controversy exceeding $75,000.00.

29.     The applicable statute of limitations is tolled based on Defendants' fraudulent concealment of the dangers and adverse side effects of the drug Yaz/Yasmin from plaintiff as more fully stated herein.  Additionally, for the reasons stated herein, Defendants are equitably estopped from raising the statute of limitations defense.

## FACTUAL BACKGROUND

30.     Plaintiff brings this case against Defendants for damages associated with Plaintiff's ingestion of the pharmaceutical drug Yaz/Yasmin (ethinyl estradiol and drospirenone), an oral contraceptive designed, manufactured, marketed and distributed by Defendants.

Specifically, as a direct result of her use of Yaz/Yasmin, Plaintiff suffered from suffered blood clotting and related injuries, requiring hospitalization, and resulting in the stillbirth of her daughter, at twenty-seven (27) weeks of pregnancy.

31.     Plaintiff did not know, nor could she have reasonably discovered through the use of reasonable diligence, that Yaz/Yasmin wrongfully caused her to suffer her injuries and that she had a claim against Defendants until less than two years from the date of filing this action.

## Bayer's Combined Oral Contraceptives - Yaz and Yasmin

32.     Yaz and Yasmin are birth control pills manufactured and marketed by Defendants. They are combination oral contraceptives, or "COCs," meaning they contain an estrogen component and a progestin component.  These steroidal components work together in COCs to suppress ovulation, fertilization and implantation, and, thus, they prevent pregnancy.

33.     The Food and Drug Administration ("FDA") approved Yaz and Yasmin for marketing in 2006 and 2001, respectively.

## Yaz and Yasmin contain a "Fourth Generation" Progestin.

34.     The estrogen component in Yaz/Yasmin is known generically as ethinyl estradiol. The progestin component is known as drospirenone.  Yasmin contains 0.03 milligrams of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol. Both products contain 3 milligrams of drospirenone.

35.     Yaz and Yasmin are different from other combined hormonal birth control pills in that they contain drospirenone.  Drospirenone is a progestin that is unlike other progestins available in the United States.   No combined hormonal birth control pills containing drospirenone had been marketed in the United States prior to Yaz/Yasmin.

36.     Shortly after the introduction of combined oral contraceptives in the 1960s, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks and strokes than women not using birth control pills.  As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels were reduced, so, too, did the risk of blood clots, heart attacks and strokes.

37.     During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel). These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped reduce the risk of blood clots, heart attacks and strokes and were considered safer for women.

38.     During the 1990s, new "third generation" progestins were developed. Unfortunately, these third generation progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep venous thrombosis or "DVT") and lungs (pulmonary embolism or "PE").  As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a warning of the potentially increased risk of thrombosis.

39.     Yaz and Yasmin contain the same estrogen component, ethinyl estradiol, which has been used in the lower-dose birth control pills for decades.

40.     However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.  No other birth control pills contain drospirenone, except for a recently approved generic version of Yaz/Yasmin marketed under the trade name Ocella.

41.     Because drospirenone is new, there is insufficient data available to support its safe use, particularly when compared with second generation progestins.  In fact, studies performed

prior to FDA approval indicate that drospirenone has certain effects that are different from, and potentially more dangerous than, those of traditional second generation progestins.

42.     One possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which, if the potassium levels become too high, can lead to a condition known as hyperkalemia.  Hyperkalemia can cause heart rhythm disturbances, such as extrastolies, pauses or bradycardia.   If left untreated, hyperkalemia can be fatal. If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form.  Blood clots in the heart can lead to heart attacks, or the clots can break off and travel to the lungs where they can cause heart attacks, or they can travel to the brain and cause strokes.

43.     During the brief time that Yaz/Yasmin have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

**Establishing the dangers associated with "Fourth Generation" Progestin**

44.     In April 2002, the <u>British Medical Journal</u> reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

45.     In February 2003, a paper entitled "Thromboembolism Associated with the New Contraceptive Yasmin" was published in the <u>British Medical Journal</u> detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism, including two resulting in death, where Yasmin was suspected as the cause.

46.     In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, more than 50 reports of death among users of Yaz/Yasmin were filed with the FDA.

47.     These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, heart attack and stroke in women in their childbearing years.

48.     Some reported deaths occurred in women as young as 17 years old.

49.     Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yaz/Yasmin.

50.     Two recent studies, dated August 2009, have found significantly increased risks associated with Yaz and Yasmin over other types of birth control pills.  The first assessed the risk of venous thrombosis in women who take hormonal contraception and was conducted on women ages 15-49 with no history of heart disease or any other malignant disease.  The study concluded "oral contraceptives with …drospirenone were associated with a significantly higher risk of venous thrombosis than oral contraceptives with evonorgestrel." Lidegaard, et.  al., Hormonal contraception and risk of venous thromboembolism: national follow-up study, BMJ 2009;339:b2890.

51.     The second recent study found that Yaz and Yasmin users have twice the risk of a clotting event than users of birth control pills that contain levonorgestral.  Vandenbroucke, et.  al, The venous thrombotic risk of oral contraceptives, effects of estrogen dose and progestogen type: results of the MEGA case-control study.  BMJ 2009;339:b2921.

## Over-Promotion of Yasmin and Yaz

52.     Defendants market Yaz/Yasmin as providing the same efficacy as other birth control pills in preventing pregnancy but with additional benefits.

53.     However, because Yaz/Yasmin contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

54.     Despite the foregoing evidence of increased risks of suffering thrombotic events, Defendants, through their marketing and advertising, urged young women to use their products, and in many cases, switch from products that presented a safer alternative.

55.     Bayer did so in many respects through deceptive and misleading advertising.  For example, prior to its sale to Defendant Bayer in 2006, Defendant Berlex promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

56.     In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was more beneficial compared to the progestin used in other combined oral contraceptives and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone in Yasmin is clinically beneficial.  On the contrary, FDA is aware of the added clinical risks associated with drospirenone [.]" The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

57.     Recently, Defendants advertised that its product Yaz/Yasmin was indicated for treatment of premenstrual syndrome or "PMS," as opposed to the less serious condition of premenstrual dysphoric disorder or "PMDD." Defendants also advertised that Yaz/Yasmin contained the added benefit of preventing or reducing acne.

58.     In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement and reiterated that the marketing was

misleading because it promoted Yaz/Yasmin for medical conditions beyond the limits of the FDA approval.  The FDA added that "Yaz/Yasmin has additional risks because it contains the progestin, drospirenone ... which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems."

59.     The FDA further warned in its October 3, 2008, letter that Yaz/Yasmin "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

60.     Indeed, the FDA felt Defendants' over-promotion was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz/Yasmin advertisements regarding acne and premenstrual syndrome.

61.     Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz/Yasmin advertisements to the FDA for advanced screening for the next six years.

**Plaintiff's Use of Yaz/Yasmin and Resulting Injuries**

62.     As a result of Defendants' claims regarding the efficacy and safety of Yaz/Yasmin, Plaintiff's medical provider prescribed and Plaintiff began using Yaz/Yasmin.

63.     As a direct and proximate result of using Yaz/Yasmin, Plaintiff suffered from personal injuries.

64.     Plaintiff did not know, nor could she have reasonably discovered through the use of reasonable diligence, that Yaz/Yasmin wrongfully caused her to suffer injuries and that she had a claim against Defendants until less than two years from the date of filing this action.

65.     Prior to Plaintiff's use of Yaz/Yasmin, Defendants knew or should have known that use of Yaz/Yasmin created a higher risk of cardiovascular and gallbladder injuries than other

oral contraceptives on the market, including, but not limited to, second generation oral contraceptives and that, when taken as directed, such use was unreasonably dangerous to consumers.

66.     Therefore, at the time Plaintiff used Yaz/Yasmin, Defendants knew or should have known that the use of Yaz/Yasmin created an increased risk to consumers of serious personal injury, including pulmonary embolism (PE), deep venous thrombosis (DVT), heart attack, stroke and even death.

67.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yaz/Yasmin, Defendants failed to warn Plaintiff and/or her health care providers of said serious risks before she used the product.

68.     Had Plaintiff and/or her heath care providers known the risks and dangers associated with Yaz/Yasmin, she would not have used Yaz/Yasmin and would not have suffered from her injuries.

69.     As a direct and proximate result of her use of Yaz/Yasmin, Plaintiff suffered personal injuries, including, but not limited to, conscious pain and suffering.

70.     As a direct and proximate result of Plaintiff's use of Yaz/Yasmin, Plaintiff has suffered and will continue to suffer pecuniary losses.

## FIRST CAUSE OF ACTION

### Strict Product Liability

### Defective Manufacturing

71.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

92660.1

72.     Defendants are the manufacturers, designers, distributors, sellers and/or suppliers of Yaz/Yasmin.

73.     The Yaz/Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were expected to and did reach the consumer without any alterations or changes.

74.     The Yaz/Yasmin birth control pills that Defendants manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce were defective in their manufacture and construction when they left the hands of Defendants in that they deviated from product specification, such that they were unreasonably dangerous to an ordinary user or consumer and posed a serious risk of injury and death.

75.     As a direct and proximate result of Plaintiff's use of Yaz/Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff suffered personal injuries, and Plaintiff suffered economic and non-economic damages.

76.     Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiff's rights so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION

## Strict Product Liability

## Design Defect

77.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

78.     Defendants are the manufacturers, designers, distributors, sellers and/or suppliers of Yaz/Yasmin.

79.     The Yaz/Yasmin birth control pills that Defendants manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce were expected to and did reach the consumer without any alterations or changes.

80.     The Yaz/Yasmin birth control pills manufactured and supplied by Defendants were defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or they were more dangerous than an ordinary consumer would expect.

81.     The foreseeable risks associated with the design or formulation of the Yaz/Yasmin birth control pills, include, but are not limited to, the fact that the design or formulation of Yaz/Yasmin is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

82.     As a direct and proximate result of Plaintiff's use of Yaz/Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff suffered personal injuries, economic and non-economic damages, including pain and suffering.

83.     Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiff's rights so as to warrant the imposition of punitive damages.

## THIRD CAUSE OF ACTION

### Strict Product Liability

### Defect Due to Inadequate Warning

84.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

85.     The Yaz/Yasmin birth control pills that Defendants manufactured and supplied were defective due to inadequate warning or instruction and were unreasonably dangerous to the ordinary user or consumer because Defendants knew or should have known that the product created significant risks of serious bodily harm and death to consumers, and Defendants failed to adequately warn consumers and/or their health care providers of such risks.

86.     The Yaz/Yasmin birth control pills that Defendants manufactured and supplied were defective due to inadequate post-marketing warning or instruction and were unreasonably dangerous to the ordinary user or consumer because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yaz/Yasmin, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product.

87.     As a direct and proximate result of Plaintiff's use of Yaz/Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff suffered personal injuries, economic and non-economic damages.

88.     Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiff's rights so as to warrant the imposition of punitive damages.

## FOURTH CAUSE OF ACTION

### Negligence

89.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

90.     Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of Yaz/Yasmin into the stream of commerce, including a duty to assure that its product did not pose a significantly increased risk of bodily harm and adverse events.

91.     Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotion and distribution of Yaz/Yasmin into interstate commerce in that Defendants knew or should have known that the product caused such significant bodily harm or death and that it was not safe for use by consumers.

92.     Defendants also failed to exercise ordinary care in the labeling of Yaz/Yasmin and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Yaz/Yasmin.

93.     Despite the fact that Defendants knew or should have known that Yaz/Yasmin posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Yaz/Yasmin for use by consumers.

94.     Defendants knew or should have known that consumers, including Plaintiff, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

95.     As a direct and proximate result of Defendants' negligence, Plaintiff suffered personal injuries, economic and non-economic damages.

92660.1

96.     Defendants' conduct as described above, including, but not limited, to their failure adequately to test Yaz/Yasmin, to provide adequate warnings, and their continued manufacture, sale and marketing of the product when it knew or should have known of the serious health risks it created, evidences malicious actions, aggravated or egregious fraud, and/or intentional disregard of the rights of Plaintiff, so as to warrant the imposition of punitive damages.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

97.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

98.     Defendants are the manufacturers, designers, distributors, sellers and/or suppliers of Yaz/Yasmin and made representations to Plaintiff and her health care providers regarding the character or quality of Yaz/Yasmin for guidance in their decision to select Yaz/Yasmin.

99.     Specifically, Defendants represented that their product was just as safe or safer and just as effective or more effective, than other birth control products on the market.

100.    Defendants' representations regarding the character or quality of Yaz/Yasmin were untrue.

101.    Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yaz/Yasmin created an unreasonable risk of serious bodily injury and death to consumers or should have known such information.

102.    Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as safer and more effective than other types of oral contraceptives in order to avoid losses and to sustain profits in its sales to consumers.

103.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff and her health care providers.

104.    To Plaintiff's detriment, Plaintiff and her health care providers reasonably relied upon Defendants' misrepresentations and/or omissions in its labeling, advertisement and promotion concerning the serious risks posed by the product. Plaintiff reasonably relied upon Defendants' representations to her and/or her health care providers that Yaz/Yasmin was safer than other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

105.    As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations or omissions, Plaintiff suffered personal injuries and economic and non-economic damages, including pain and suffering.

106.    Defendants' actions and omissions as identified in this Complaint demonstrate malicious actions, aggravated or egregious fraud, and/or intentional disregard of Plaintiff's rights so as to warrant the imposition of punitive damages.

## SIXTH CAUSE OF ACTION

### Intentional and Wanton Conduct and Request for Punitive Damages

107.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

108.    At all material times, the Defendants knew or should have known that Yaz/Yasmin was inherently dangerous.

92660.1

109.    Despite their knowledge, the Defendants continued to market Yaz/Yasmin to consumers, including Plaintiff, without disclosing its dangerous side effects when there existed safer alternative products.

110.    Despite Defendants' knowledge of Yaz/Yasmin's defective and unreasonably dangerous nature, Defendants continued to test, design, develop, manufacture, label, package, promote, market, sell and distribute it so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff, in conscious disregard of the foreseeable harm caused by Yaz/Yasmin.

111.    The Defendants' conduct was intentional and/or wanton.

112.    The Defendants' conduct as described above, including, but not limited to, their failure to test their product adequately, their failure to provide adequate warnings, and their continued manufacture, sale and marketing of their products when they knew or should have known of the serious health risks created by their product evidences a flagrant disregard of human life, as to warrant the imposition of punitive damages as the acts or omissions were committed with knowing, conscious and deliberate disregard for the rights and safety of consumers, including Plaintiff.

## SEVENTH CAUSE OF ACTION

### Breach of Express Warranty

113.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

114.    The Defendants expressly warranted that Yaz/Yasmin was a safe and effective prescription contraceptive.

115.    The Yaz/Yasmin birth control pill manufactured and sold by Defendants did not conform to these express representations because it caused serious injury to consumers when taken in recommended dosages.

116.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

## EIGHTH CAUSE OF ACTION

### Breach of Implied Warranty

117.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

118.    At the time the Defendants designed, manufactured, marketed, sold, and/or distributed Yaz/Yasmin for use by Plaintiff, Defendants knew of the use for which Yaz/Yasmin was intended and impliedly warranted the product to be of merchantable quality and safe for such use.

119.    Plaintiff reasonably relied upon the skill and judgment of the Defendants as to whether Yaz/Yasmin was of merchantable quality and safe for its intended use and upon the Defendants' implied warranty as to such matters.

120.    Contrary to such implied warranty, Yaz/Yasmin was not of merchantable quality or safe for its intended use because the product was unreasonably dangerous as described above.

121.    As a direct and proximate result of the Defendants' breach of warranty, Plaintiff has suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

92660.1

## NINTH CAUSE OF ACTION

### Violation of the Deceptive Trade Practices Act

122.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

123.    Defendants violated the Deceptive Trade Practices Act ("DTPA") of the state in which Plaintiff resides by the use of false and misleading misrepresentations or omissions of material fact in connection with the marketing, promotion and sale of Yaz/Yasmin.

124.    Defendants communicated the purported benefits of Yaz/Yasmin while failing to disclose the serious and dangerous side effects related to the use of Yaz/Yasmin with the intent that consumers, like Plaintiff, and their health care providers rely upon the omissions and misrepresentations and purchase or prescribe Yaz/Yasmin, respectively.

125.    As a result of violating the DTPA, Defendants caused Plaintiff to be prescribed and to use Yaz/Yasmin, causing severe injuries and damages as previously described herein in paragraphs 23-30.

**WHEREFORE**, Plaintiff prays for relief as follows:

1.    Compensatory and punitive damages in excess of the jurisdictional amount;

2.    Medical expenses and other economic damages in an amount to be determined at trial of this action;

3.    Attorneys' fees, expenses and costs of this action;

4.    Punitive damages in excess of twice the compensatory damages award;

5.    Pain and suffering; and

6.    Such further relief as this Court deems necessary, just and proper.

92660.1

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

CAREY, DANIS & LOWE

Dated: <u>July 9, 2010</u>

By: <u>/s/ Francis J. Flynn</u>
        Jeffrey J. Lowe
        Andrew J. Cross
        Francis J "Casey" Flynn
        Sarah Bauman
        Attorneys for Plaintiffs
        8235 Forsyth, Suite 1100
        St. Louis, Missouri 63105
        (314) 678-3400
        Fax: (314) 678-3401
        jeff@jefflowepc.com

**Attorneys for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on July 9, 2010, I electronically filed the foregoing with the Clerk of the Court and served same on all counsel of record using the CM/ECF system.


       <u>/s/ Francis J. Flynn         </u>